UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LALYNDA HEDGES and ZYAIRE
SIMMONS, on behalf of themselves and all
others similarly situated,

               Plaintiffs,

  -v-

UNITED PARCEL SERVICE OF AMERICA,
INC.,

               Defendant.

No. 1:20-cv-00870


**COLLECTIVE AND CLASS ACTION
COMPLAINT**

      Plaintiffs, LALYNDA HEDGES and ZYAIRE SIMMONS, individually, and on behalf of

all others similarly situated, by and through their counsel Eisner & Dictor, P.C. and Charny &

Wheeler P.C., upon personal knowledge as to themselves and upon information and belief as to

other matters, allege as follows:

## NATURE OF THE ACTION

      1.     This lawsuit is a collective and class action brought under the Fair Labor Standards

Act ("FLSA") and the New York Labor Law ("NYLL") and supporting New York State

Department of Labor Regulations that seeks to recover unpaid minimum wages, regular wages,

and overtime wages that defendant improperly withheld from Plaintiffs and other similarly situated

individuals and seeks to recover damages for failure to provide accurate wage statements.

      2.     Defendant has deprived Plaintiffs and their similarly situated co-workers of

minimum wages and overtime wages during the peak season (as defined herein) of each calendar

year since at least 2017, in violation of the FLSA, 29 U.S.C. § 201, *et seq.*

      3.     Defendant has deprived Plaintiffs and their similarly situated co-workers of

minimum wages, regular wages, and overtime wages and have failed to provide accurate wage

statements during the peak season (as defined herein) of each calendar year since at least 2014, in violation of the NYLL.

## JURISDICTION AND VENUE

4.    With respect to the federal claims asserted herein the Court's original jurisdiction is invoked pursuant to 28 U.S.C. § 1331 since this case is brought under the FLSA, 29 U.S.C. §§ 201, *et seq.*

5.    With respect to the state claims asserted herein the Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), as the state claims are so related that they form part of the same case or controversy under Article III of the United States Constitution.

6.    Venue is proper in this District because defendant conducts business in this judicial district, and the acts and/or omissions giving rise to Plaintiffs' claims asserted herein took place in this District.

## THE PARTIES

7.    Plaintiff Lalynda Hedges ("Hedges") is an adult individual residing in Kings County and was employed as a temporary employee by Defendant from November 1, 2019 to January 14, 2020.

8.    Plaintiff Zyaire Simmons ("Simmons") is an adult individual residing in Kings County and was employed as a temporary employee by Defendant from October 2018 to January 2019, and again from late October 2019 to late December 2019.

9.    Defendant United Parcel Service, Inc. ("UPS") is a corporate entity organized under the laws of the State of Georgia that employs or employed Plaintiffs and their similarly situated co-workers.

## FACTS

10.     At all times relevant, UPS has been an enterprise whose gross volume of sales made, or business done, is in excess of $500,000, exclusive of excise taxes at the retail level that are separately stated. As such, defendant is an enterprise engaged in commerce as defined by 29 U.S.C. § 203(s).

11.     Throughout their employment with UPS, Plaintiffs and their similarly situated co-workers engaged in commerce between the states by handling and delivering goods and materials in interstate commerce.

12.     Defendant UPS operates an international parcel delivery service with a total of approximately 500,000 employees.

13.     Globally, UPS operates out of facilities which receive packages, sort them, and send the packages out for delivery with drivers. There are more than 500 facilities in more than 125 countries.

14.     At all times relevant to this Complaint, defendant UPS has been an employer of Plaintiffs and their similarly situated coworkers.

15.     For each year within the applicable statute of limitations, from on or about October 15 through on or about January 15 of each year, UPS has experienced an increase in business volume ("peak season") and has required the hiring of additional, temporary employees ("seasonal helpers"). The increase in business volume is commonly attributed to increased commerce and shipping during the holiday season.

16.     Since at least January 30, 2014, in the State of New York, within the counties of Westchester, New York, Kings, Queens, Nassau and Suffolk, UPS has utilized seasonal helpers during peak season. These facilities include the following (referred to collectively as the "District

Facilities"):

      a.   Yorktown Facility: 1785 Front Street, Yorktown Heights, New York 10598;

      b.   Elmsford Facility: 3 Warehouse Lane, Elmsford, New York 10523;

      c.   Mount Vernon Facility: 4215 Boston Road, Pelham, New York 10803;

      d.   Manhattan North Facility: 180 Canal Place, Bronx, New York 10454;

      e.   Brush Avenue Facility: 545 Brush Avenue, Bronx, New York 10465;

      f.   43rd Street Facility: 643 West 43rd Street, New York, 10036;

      g.   Manhattan South Facility: 325 West Houston Street, New York 10014;

      h.   Foster Avenue Facility: 10401 Foster Avenue, Brooklyn, 11236;

      i.   Queens North Facility: 4910 27th Street, Long Island City, 11101;

      j.   Island City Facility: 4605 56 Road Maspeth, New York 11378;

      k.   Laurelton Facility: 136-40 Springfield Boulevard, Springfield Gardens, New York 11413;

      l.   Nassau Facility: 300 Oak Street, Uniondale, New York 11553;

      m.   Melville Facility: 75 Smith Street, East Farmingdale, New York 11735;

      n.   Suffolk Facility: 980 Horseblock Road, Farmingville, New York 11738.

17.    UPS hired Plaintiff Hedges to work as a seasonal helper during the 2019 peak season on November 1, 2019.

18.    UPS has hired Plaintiff Simmons to work as a seasonal helper during the 2018 and 2019 peak seasons. Simmons was hired on or about October 20, 2018 and then again on or about November 1, 2019.

19.    At all times relevant, seasonal helpers, including Plaintiffs and their similarly situated co-workers, were required to arrive at their assigned facilities between 8:30 a.m. and 8:45

a.m. Plaintiffs received text messages from their supervisors/managers instructing them as to the time they were required to report to work each day.  Upon arrival at their assigned facility, seasonal helpers were required to sign-in manually on a sign-in sheet.  Thereafter, seasonal helpers were required to remain at the facility and await dispatch with an assigned regular package car driver. The exact time of dispatch varied from day to day depending on when the truck was loaded and ready.

20.     At all times relevant, regular package car drivers and their assigned seasonal helpers scanned the barcodes and/or QR codes attached to each package at the time of its delivery with a Delivery Information Acquisition Device ("DIAD") or cellphone equipped with a scanning application provided by UPS that recorded the same information as a DIAD.

21.     At all times relevant, seasonal helpers including Plaintiffs, were not paid for (i) the time that they were required to await dispatch following the start of their shift; (ii) the time they worked following dispatch while in transit to their first delivery; or (iii) the worked while in transit back to their assigned facility following their last delivery. For each shift worked during all times relevant, seasonal helpers were only paid for the time between (i) the scanning of the first package they delivered and (ii) the scanning of the last package they delivered.

## THE PLAINTIFFS

22.     Hedges was employed by UPS as a seasonal helper during the 2019 peak season at the Foster Avenue Facility from November 1, 2019 to January 14, 2020.

23.     Hedges was required to report to a UPS supervisor identified as the "Helper Coordinator," who was known to Hedges as Dominique (last name is unknown).

24.     Throughout her employment with UPS, Hedges communicated with Dominique via text messages where she would receive instructions concerning, *inter alia,* the time she was

expected to arrive at the facility for work each day.

25.     Simmons was employed by UPS as a seasonal helper during the 2018 peak season at the 43rd Street Facility, located at 601 West 43rd St, New York, NY, 10036 from on or about October 20, 2018 through on or about January 15, 2019.

26.     Simmons was employed again by UPS as a seasonal helper during the 2019 peak season at the Foster Avenue Facility from on or about November 1, 2019 until on or about the end January 3, 2020.

27.     At all times relevant, Plaintiffs and their similarly situated co-workers at the Maspeth, Laurelton, Foster Avenue, Brush Avenue, and Nassau Facilities were required to arrive at their assigned facility between 8:30 a.m. and 8:45 a.m. on each day they were scheduled to work.

28.     At all times relevant, Plaintiffs and their similarly situated co-workers were not paid for the time they worked on each shift prior to the time their first package was scanned as delivered.

29.     At all times relevant, Plaintiffs and their similarly situated co-workers were not paid for the time they worked on each shift following the delivery of the final package. This included the time they worked while assisting their assigned regular package car driver in transit back to their assigned facility to sign out for the day.

## FAILURE TO PAY FOR ALL HOURS WORKED

30.     For each shift throughout their employment with defendant, seasonal helpers, including Plaintiffs, were punched-in by defendant for payroll purposes upon the scanning of the first package that was delivered on their route. They were subsequently punched-out by defendant for payroll purposes upon the scanning of the final package that was delivered on their route. Defendant's practice of punching Plaintiffs in after they started working and punching them out before they finished working resulted in underpayment of regular and overtime wages in violation

of the FLSA and the NYLL.

31.    At all times relevant, UPS failed to accurately record all of Plaintiffs' compensable time, and that of their similarly situated co-workers, including the time they worked prior to the delivery of the first package and following the delivery of the final package on each shift.

32.    At all times relevant, plaintiffs and their similarly situated co-workers assigned to the Maspeth, Laurelton, Foster Avenue, Brush Avenue, and Nassau facilities were required to arrive at their assigned facility between 8:30 a.m. and 8:45 a.m.

33.    The time of the first delivery for each shift varied. Based on information provided by Plaintiffs, during the 2019 peak season, the first delivery for Plaintiffs' shifts occurred as early as 9:46 a.m. and as late as 11:30 a.m. on days that they were required to report to their assigned facility between 8:30 a.m. and 8:45 a.m. A representative sample of initial package delivery times for Plaintiff Hedges during the 2019 peak season includes:

     a.   November 12: 9:49 AM

     b.   November 13: 10:27 AM

     c.   November 14: 10:20 AM

     d.   November 15: 10:30 AM

     e.   November 18: 10:45 AM

     f.   November 21: 10:03 AM

     g.   November 22: 9:09 AM

     h.   November 25: 9:46 AM

     i.   November 26: 11:00 AM

     j.   December 3: 10:00 AM

     k.   December 4: 10:00 AM

l.   December 5: 11:30 AM

m.   December 6: 10:30 AM

n.   December 7: 10:00 AM

o.   December 9: 9:45 AM

p.   December 10: 10:00 AM

q.   December 11: 11:30 AM

r.   December 14: 10:30 AM

34.   During the payroll period beginning December 1, 2019 and ending December 7, 2019, the failure to pay Plaintiff Hedges for time worked before her first delivery and after her final delivery resulted in an underpayment of overtime since she worked in excess of forty hours that week

35.   During the payroll period beginning November 24, 2019 and ending November 30, 2019, the failure to pay Plaintiff Hedges for time worked before her first delivery and after her final delivery resulted in an underpayment of minimum wages for those hours since she did not work in excess of forty hours in that week.

36.   Defendant's practice of not recording all the time Plaintiffs and their similarly situated co-workers worked for payroll purposes resulted in an unlawful failure to pay regular and overtime wages earned, as well as an unlawful deduction from wages.

### FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS

37.   At all times relevant, Plaintiffs and their similarly situated co-workers were given online access to a weekly record of the hours for which they were paid. These records did not accurately reflect all the hours that Plaintiffs and their similarly situated co-workers worked. Specifically, the start time for each day recorded corresponded with the scanning of the first

package delivered on that date. The time recorded as the end of their shift was the time the last package was scanned as delivered. The weekly record did not reflect the time Plaintiffs arrived at their assigned facility at the direction of defendant, or the time they returned at the end of their shift to sign-out.

38.     Upon information and belief, employees lose access to the online record of their hours following separation from employment with UPS at the end of peak season.

39.     At all times relevant, Plaintiffs and their similarly situated co-workers were provided with inaccurate wage statements during their time working as seasonal helpers for UPS. Specifically, the wage statements provided failed to accurately record all hours worked in each shift.

40.     Upon information and belief, defendant is in possession of records reflecting the time Plaintiffs and their similarly situated co-workers arrived at their assigned facilities in the form of sign-in sheets and building security logs.

41.     Upon information and belief, defendant is in possession of records reflecting the exact time of the first and last delivery of each shift worked by Plaintiffs and their similarly situated co-workers in the form of records known as "SPARCS Reports," "ETT' data, DIAD data, and other delivery reports.

42.     Upon information and belief, a record of the hours worked by Plaintiffs and their similarly situated co-workers is stored in defendant's records and remains in their exclusive control.

## FLSA COLLECTIVE ACTION ALLEGATIONS

43.     Plaintiffs bring the Fifth and Sixth Claims for Relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all persons employed by defendant as

seasonal helpers at the District Facilities, on or after the date that is three years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

44.     At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to defendant's decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them all wages earned, including minimum wages and overtime wages.

45.     Specifically, defendant has willfully violated Plaintiffs' and FLSA Collective Plaintiffs' rights through defendant's unlawful practice of not paying Plaintiffs and the FLSA Collective Plaintiffs for the hours they worked for defendant between the time they reported to work and the time of their first delivery, as well as the time they worked following the their last delivery of each shift.

46.     The Fifth and Sixth Claims for Relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b).  The FLSA Collective Plaintiffs are readily ascertainable. For the purpose of notice and for other purposes related to this action, their names and addresses are readily available from the defendant. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to defendant.

## RULE 23 CLASS ACTION ALLEGATIONS – NEW YORK LABOR LAW

47.     Plaintiffs bring the First, Second and Fourth Claims for Relief pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") on behalf of all persons employed by the defendant as seasonal helpers during any peak season between January 30, 2014 and January 30, 2020 at any of the District Facilities, who were not paid for time worked (i) between the time

they reported to work and the time of the first delivery on any shift; and/or (ii) between the time

of the final delivery and the time they ceased working on any shift (Sub-Class 1).

48.     Plaintiffs bring the Third Claim for Relief pursuant to Rule 23 of the Federal Rules

of Civil Procedure ("Fed. R. Civ. P.") on behalf of all persons employed by the defendant as

seasonal helpers during any peak season between January 30, 2014 and January 30, 2020 at any

of the District Facilities, who were not provided with wage statements containing an accurate

record of all hours worked (Sub-Class 2).

49.     All persons within one or more of the above Sub-Classes, including Plaintiffs, are

referred to herein as the "Class." The Class members are readily ascertainable. The number and

identity of the Class members are determinable from the records of defendant. The hours assigned

and worked, the positions held, and the rates of pay for each Class member are also determinable

from defendant's records.  For purposes of notice and other purposes related to this action, their

names and addresses are readily available from defendant. Notice can be provided by means

permissible under F.R.C.P. 23.

50.     The proposed Class is so numerous that joinder of all members is impracticable,

and the disposition of their claims as a class will benefit the parties and the Court.  Although the

precise number of such persons is unknown, and the facts on which the calculation of that number

will be based are presently within the sole control of the defendant, upon information and belief

derived from Plaintiffs' observations there are more than five hundred (500) members of the Class.

Accordingly, the numerosity requirement of Fed. R. Civ. P. 23(a)(1) is satisfied.

51.     There are questions of law and fact common to the class as required by Fed. R. Civ.

P. 23(a)(2). All the Class members were and are subject to the same practices of defendant, as

alleged herein, of unlawfully failing to pay Plaintiffs and the Class at least the minimum wage for

all hours worked, failing to pay Plaintiffs and the Class regular  and overtime wages, unlawfully deducting wages from Plaintiffs and the Class, and failing to provide Plaintiffs and the Class with accurate wage statements.  Defendant's corporate-wide policies and practices affected all Class members similarly, and defendant improperly benefitted from the same type of wrongful acts as to each Class member.

52.     Plaintiffs' claims are typical of the claims of the Class.  Plaintiffs sustained losses, injuries and damages similar to those of all class members in that Plaintiffs' claims arise from the same policies, practices and procedures of the defendant that have been imposed on other seasonal helpers.  Plaintiffs' claims could be alleged by any member of the Class, and the relief they seek is typical of the relief which would be sought by each member of the Class in separate actions. Accordingly, the typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied.

53.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class.  Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiffs in many FLSA and New York Labor Law cases in this District. Accordingly, the requirements of Fed. R. Civ. P. 23(a)(4) are satisfied.

54.     The requirements of Rule 23(b)(3) for class certification are satisfied in that:

A.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

i. Whether defendant employed Plaintiffs and the Class members within the meaning of federal law;

ii. Whether defendant employed Plaintiffs and the Class members within the meaning of New York law;

iii. Whether defendant paid Plaintiffs and the Class members the Federal and New York State minimum wage for all hours worked;

iv. Whether defendant willfully failed to pay Plaintiffs and the Class members their regular wages;

v. Whether defendant unlawfully deducted wages from Plaintiffs' and Class members' paychecks; and

vi. Whether defendant willfully failed to provide Plaintiffs and the Class members with accurate wage statements.

B.      A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate employer. Class action certification will allow a large number of similarly situated persons to simultaneously and efficiently prosecute their common claims in a single forum without the unnecessary duplication of effort and expense that numerous individual actions would engender. The issues in this action can be decided by means of common, class-wide proof.  In addition, because the losses, injuries and damages suffered by each of the Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs that have resulted from defendant's unlawful conduct. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

## FIRST CLAIM FOR RELIEF

### (Deduction of Wages for Work Prior to First and After Last Delivery)

### (N.Y. Lab. L. § 193 Brought by Plaintiffs on Behalf of Themselves and the Class)

51.     Plaintiffs, on behalf of themselves and members of the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth fully herein.

52.     Defendant made unlawful deductions from the wages of Plaintiffs and the members of the Class when defendant (i) failed to pay Plaintiffs and Class members for the time between the beginning of their shift and the time of the delivery of the first package on that shift; and (ii) failed to pay Plaintiffs and Class members for the time between the delivery of the last package and the end of each shift resulting in an underpayment of wages. Accordingly, defendant has deducted from the wages of Plaintiffs and the Class, and Plaintiffs and the Class are entitled to recover those wages.

53.     As a result of defendant's willful and unlawful conduct, Plaintiffs and the members of the Class are entitled to an award of damages in an amount to be determined at trial, plus prejudgment interest, reasonable attorneys' fees and costs, along with such other relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF

### (Failure to Pay Minimum Wage)

### (New York State Minimum Wage Act, New York Labor Law §§ 650 *et seq.* Brought by Plaintiffs on Behalf of Themselves and the Class)

54.     Plaintiffs, on behalf of themselves and members of the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth fully herein.

55.     Throughout the period covered by the applicable statute of limitations and upon information and belief, defendant willfully and repeatedly paid Plaintiffs and the members of the

Class less than the New York State Minimum Wage in violation of NYLL and supporting regulations of the New York State Department of Labor.

56.     Plaintiffs and the Class seek and are entitled to recover damages to recover their respective unpaid compensation, damages pursuant to NYLL, Article 6, § 198, attorneys' fees, costs, pre-judgment interest along with such other relief as this Court deems just and proper.

<u>**THIRD CLAIM FOR RELIEF**</u>

**(Failure to Furnish Accurate Wage Statements)**

**(N.Y. Lab. L. § 195 & 12 N.Y.C.R.R. § 141.2.2, Brought by Plaintiffs on Behalf of Themselves and the Class)**

57.     Plaintiffs, on behalf of themselves and members of the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth fully herein.

58.     Defendant has willfully failed to furnish Plaintiffs and the Class with statements of wages as required by NYLL § 195, as the paystubs provided to them substantially understated the number of hours actually worked.

59.     By failing to provide Plaintiffs and Class members with wage statements setting forth the actual number of hours they worked with each payment of wages, defendant has willfully violated the NYLL.

60.     As a result of defendant's willful and unlawful conduct, Plaintiffs and the Class members are entitled to statutory penalties for each workweek that defendant failed to provide them with required wage statements, up to the statutory cap, reasonable attorneys' fees, costs, along with such other relief as this Court deems just and proper.

## FOURTH CLAIM FOR RELIEF

### (Failure to Pay Overtime)

### (NYLL §§ 650 *et seq.* and 12 NYCRR § 142-2.2,  Brought by Plaintiffs on Behalf of Themselves and the Class)

61.     Plaintiffs, on behalf of themselves and members of the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth fully herein.

62.     Throughout the period covered by the applicable statute of limitations and upon information and belief, defendant willfully and repeatedly failed to pay Plaintiffs and the Class at their overtime rate, as required by NYLL and the supporting regulations of the New York State Department of Labor.

63.     Plaintiffs seek, and are entitled, to recover their unpaid overtime compensation, attorneys' fees, costs and pre- and post-judgment interest along with such other relief as this Court deems just and proper.

## FIFTH CLAIM FOR RELIEF

### (Failure to Pay Minimum Wage)

### (FLSA, 29 U.S.C. §§ 201 *et seq.*, Brought by Plaintiffs on Behalf of Themselves and the FLSA Collective Plaintiffs)

64.     Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, reallege and incorporate by reference all preceding paragraphs as if they were set forth fully herein.

65.     At all relevant times, defendant has been, and continue to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.

66.     At all relevant times, defendant has employed Plaintiffs and the FLSA Collective Plaintiffs as "employees" within the meaning of FLSA, 29 U.S.C. § 203.

67.     At all relevant times, defendant was required to pay Plaintiffs and the FLSA

Collective Plaintiffs at a rate not less than the minimum wage rate under the FLSA for all hours worked.

68.     Upon information and belief, throughout the period covered by the applicable statute of limitations, defendant knowingly failed to pay Plaintiffs and the FLSA Collective Plaintiffs the required minimum wage under the FLSA for each hour worked.

69.     Upon information and belief, throughout the period covered by the applicable statute of limitations, defendant failed to pay Plaintiffs and the FLSA Collective Plaintiffs for hours worked between the start of their shift and the time of the delivery of their first package, as well as for the hours between the delivery of the last package and the end of each shift.

## SIXTH CLAIM FOR RELIEF

### (Failure to Pay Overtime)

### (29 U.S.C. §§ 201 et seq.,  Brought by Plaintiffs on Behalf of Themselves and the FLSA Collective Plaintiffs)

70.     Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, reallege and incorporate by reference all preceding paragraphs as if they were set forth fully herein.

71.     Throughout the period covered by the applicable statute of limitations and upon information and belief, defendant willfully and repeatedly failed to pay Plaintiffs and the FLSA Collective Plaintiffs at the overtime rate, as required by the FLSA, for hours worked in excess of 40 in a given week.

72.     Plaintiffs seek, and are entitled, to recover their unpaid overtime compensation, liquidated damages as provided by the FLSA, attorneys' fees, costs, and post-judgment interest along with such other relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves, the FLSA Collective Plaintiffs, and the

members of the Class, pray for a judgment in their favor and against defendant for the following relief:

a. Designation of this action as a collective action on behalf of the FLSA Collective Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

b. Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

c. Certification of this action as a class action pursuant to F.R.C.P. 23 with respect to Plaintiffs' First, Second, Third, and Fourth Causes of Action;

d. Designation of Plaintiffs as Representatives of the Rule 23 Class;

e. An order declaring that the defendant violated the FLSA;

f. An order declaring that the defendant's violations of the FLSA were willful;

g. An order declaring that the defendant violated the NYLL;

h. An order declaring that the defendant's violations of NYLL were willful;

i. An award of minimum wage compensation under the FLSA and NYLL;

j. An award of regular wage compensation NYLL;

k. An award of liquidated damages pursuant to the FLSA;

l. An award for reimbursement for unlawful deductions from wages under NYLL;

m. An award of reimbursement for unlawfully withheld wages under NYLL;

n. An award of statutory damages for defendants' failure to provide accurate wage statements;

o.   All other damages available under the applicable laws;

p.   Attorneys' fees pursuant to 29 U.S.C. § 216, NYLL § 663, and all other applicable statutes;

q.   Pre-judgment interest as provided by law; and

r.   Such other relief as this Court deems just and proper.

## **JURY TRIAL**

Plaintiffs demand a jury trial for all causes of action and claims for which they have a right to a jury trial.

Dated: New York, New York
    February 18, 2020                     Respectfully submitted,

EISNER & DICTOR, P.C.            CHARNY & WHEELER P.C.

By:    /s/Benjamin N. Dictor       By:    /s/Nathaniel K. Charny
  Benjamin N. Dictor               Nathaniel K. Charny
  39 Broadway, Ste. 1540           9 West Market Street
  New York, NY 10006             Rhinebeck, NY 12572
  Tel (212) 473-8700              Tel (845) 876-7500
  Fax (212) 473-8705             Fax (845) 876-7501
  ben@eisnerdictor.com           ncharny@charnywheeler.com
  *Co-Counsel for Plaintiffs*         *Co-Counsel for Plaintiffs*