**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LALYNDA HEDGES and ZYAIRE SIMMONS, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED PARCEL SERVICE OF AMERICA, INC.,<br><br>    Defendant. | Case No. 1:20-cv-00870-BMC<br><br>**DEFENDANT UNITED PARCEL SERVICE OF AMERICA, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION** |

Plaintiffs seek to avoid the contractual obligations they knowingly accepted based on the incorrect (and unsupported) assertion they were members of a union at the time they entered into their arbitration agreements. They indisputably were not, and their arguments—which in any event are self-contradictory and inconsistent with the CBA—thus fail. Plaintiffs have offered no basis to upend their individual agreements with UPS. Indeed, plaintiffs concede the purely statutory claims they assert fall outside the scope of the collective bargaining agreement under which they worked. The Court should enforce the agreements as written and grant UPS's motion.

## ARGUMENT

### I. PLAINTIFFS' ARGUMENTS ARE IRRELEVANT BECAUSE THEY WERE NOT MEMBERS OF THE UNION AT THE TIME THEY EXECUTED THEIR ARBITRATION AGREEMENTS

Plaintiffs' entire opposition is premised on the assumption they were members of a collective bargaining unit at the time they executed their arbitration agreements. *See* ECF No. 18-3 at 5 ("An agreement to arbitrate employment disputes is an agreement governing a term and condition of employment, and therefore fall [*sic*] within the bar against separately negotiated agreements ***by union employees***."); 6 ("An employer violates . . . the NLRA by dealing directly with ***union-represented*** employees") (emphases added). This is wrong.

1

Plaintiff Hedges first began her employment with UPS on October 30, 2019 and opted to join the union on that date. Guzman Declaration at ¶ 3, Ex. 1. She signed her arbitration agreement almost a week before, on October 24, 2019. ECF No. 16-1; Guzman Declaration at ¶ 4. Likewise, plaintiff Simmons began her employment with UPS on November 1, 2019 and opted to join the union on that date, but executed her arbitration agreement several days before, on October 27, 2019. Guzman Declaration at ¶¶ 5-6, Ex. 3; ECF No. 16-2.[1]

Plaintiffs rely on 29 U.S.C. § 159(a) to contend "a designated bargaining representative has exclusive authority to bargain over rates of pay, wages, hours of employment, or other conditions of employment." ECF No. 18-3 at 4 (internal quotation omitted). Even assuming the arbitration agreements implicate these subjects of collective bargaining (as explained below, they do not), this provision is nonetheless inapplicable because, by its express terms, it applies only to bargaining with "the employees *in such unit*." 29 U.S.C. 159(a) (emphasis added). Unsurprisingly, the lone case plaintiffs cite that invalidated an arbitration agreement under section 159(a) involved an employee who entered into the arbitration agreement *when he was a union member*. *Mendez v. Starwood Hotels & Resorts Worldwide, Inc.* 2008 WL 2945346, at *1 (S.D.N.Y. July 29, 2008), *aff'd*, 346 Fed. Appx. 602 (2d Cir. 2009) (arbitration agreement signed in connection with plaintiff's "transfer from one position at Starwood (food runner) to another

---

[1] Plaintiffs' opposition claims "at the time plaintiffs purportedly signed the Agreements, the Union was the designated bargaining representative of plaintiffs, and plaintiffs were covered by the terms of the CBA between UPS and the Union." ECF No. 18-3 at 2. In support, plaintiffs cite the Perrone Declaration, paragraphs 4 & 5 (ECF No. 18). However, the cited paragraphs state only that plaintiffs were union members covered by the collective bargaining agreement "[d]uring their employment." *Id.* The declaration does not state *when* plaintiffs began their employment or joined the union. Thus, plaintiffs have failed to present any evidence they were members of such union "at the time plaintiffs . . . signed the Agreements."

(baker)," both of which were covered by the CBA applicable to "hotel employees").[2]

Of course, it stands to reason that "an employer generally has no duty to bargain over practices that involve non-unit employees[.]" *N.L.R.B. v. U.S. Postal Serv.*, 18 F.3d 1089, 1098 (3d Cir. 1994).[3] Here, neither plaintiff was a member of the union at the time they entered into the arbitration agreements, and UPS thus had no obligation to negotiate these agreements with a union representative who did not represent plaintiffs.[4]

## II. EVEN ASSUMING PLAINTIFFS WERE BOUND BY THE CBA AT THE TIME THEY ENTERED THEIR ARBITRATION AGREEMENTS, NOTHING IN THE AGREEMENTS CONFLICTS WITH THE CBA OR CONCERNS A SUBJECT OF COLLECTIVE BARGAINING

That plaintiffs were indisputably *not* members of the collective bargaining unit at the time they executed their arbitration agreements is dispositive. But in any event, nothing in the NLRA or the CBA prevents an employee from entering into an individual agreement with the employer to address disputes. Indeed, 29 U.S.C. § 159(a)[5] explicitly carves out from the duties

---

[2] *See also Util. Vault Co.,* 345 NLRB 79, 81-82 (2005) (agreement at issue applied to "newly hired bargaining unit employees" who were required to sign the agreement by the "third day of employment").

[3] Although there is a limited exception to this provision to the extent such negotiations "vitally affect" the terms and conditions of employment for individuals who were unit employees at the time of such negotiations (*see id.*), plaintiffs have not (and cannot) contend arbitration agreements binding them individually somehow "vitally affected" any other employees who were part of the union at the time they executed their agreements.

[4] *See also* Arthur D. Rutkowski, Employment Law Update, *Unionized Employees Right To Take Job Bias Claims To Court Is Not Waived By The Union: What About Applicants?*, 12 NO. 5 Emp. L. Update 1, 4 (1997) ("[E]ven a unionized employer could legally have the applicant sign such a Pre-Dispute Resolution Agreement. A unionized employer would not be engaging in direct dealing with an employee. The Pre-Dispute Resolution Agreement would not waive any benefits the employee receives under the collective bargaining agreement. Further, the employer is not engaging in any form of dealing with an employee that would bypass the union or undermine the union as the exclusive bargaining agent of employees.").

[5] Plaintiffs cite both Section 9(a) of the NLRA (29 U.S.C. § 159(a)) and Section 8(a)(5) (29 U.S.C. § 158(a)(5)) in support of their challenge, but these two provisions are interdependent, with Section 8(a)(5) making it an "unfair labor practice" to refuse to bargain

of "exclusive representatives" the right of individual employees "at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect[.]"[6] As the Fifth Circuit has explained, "Section 9(a) does not give [the representative] the exclusive right to handle [grievances] unless they really involve a bargaining for the unit, or an interpretation of the bargain. On the contrary, it expressly gives each employee or group of employees the right to present *their own grievances to the employer*. The purpose is to preserve in each employee as a right this direct approach to the employer to secure full consideration of his case." *Hughes Tool Co. v. N.L.R.B.*, 147 F.2d 69, 73 (5th Cir. 1945) (emphasis added).[7]

For this reason, courts have long recognized "workers' statutory rights . . . are arbitrable if the worker consents to have them arbitrated . . . and the collective bargaining agreement does not preclude such side agreements." *Pryner v. Tractor Supply Co.*, 109 F.3d 354, 363 (7th Cir. 1997). In that scenario, "there is nothing to prevent a binding arbitration." *Id.* (citations omitted). *See also Wilkinson v. New York Tel. Co.,* 1995 WL 87257, at *4 n. 5 (E.D.N.Y. Feb. 16, 1995), *aff'd*, 71 F.3d 405 (2d Cir. 1995) ("There is support for the argument that [statutory] claims could be subject to compulsory arbitration . . . However, such can be the case only where

---

collectively with the union representative, "subject to the provisions of [Section 9(a)]." 29 U.S.C. § 158(a)(5). Accordingly, these two bases need not be addressed separately.

[6] This exception is further conditioned on the bargaining representative having the "opportunity to be present at such adjustment." 29 U.S.C. § 159(a). Nothing in plaintiffs' arbitration agreements prevents this, and plaintiffs do not contend otherwise. Indeed, consistent with the agreements, UPS has no objection to a union representative being present at arbitration.

[7] Courts have long recognized statutory claims, like those plaintiffs assert here, are *individual* rights. *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) ("This Court's decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right[s] . . . under the Act.").

4

an individual employee has agreed to do so. . . . [through] an individual contract between plaintiff and defendant.") (citation omitted); *Rossetto v. Pabst Brewing Co.*, 128 F.3d 538, 541 (7th Cir. 1997) ("Although the employees could individually agree to arbitrate their statutory claims, the union could not agree on the employees' behalf."); *Atkinson v. House of Raeford Farms, Inc.*, 2012 WL 2803737, at *3 (D.S.C. July 10, 2012) (rejecting the argument a CBA categorically prohibited an employee's side agreement where the CBA permitted such agreements to the extent they did not conflict with the terms of the CBA). Indeed, "arbitration is favored in labor disputes." *Austin v. Owens-Brockway Glass Container, Inc.*, 78 F.3d 875, 879 (4th Cir. 1996) (citations omitted).[8]

In a bid to escape this outcome, plaintiffs summarily contend, without citation to any provisions in the arbitration agreements or CBA, that their agreements are "inconsistent with a CBA[.]" ECF No. 18-3 at 6. As a preliminary matter, the CBA at issue here has no categorical prohibition against "side agreements" and, in fact, explicitly contemplates their use, provided such agreements do not "in any way conflict[] with the provisions of [the CBA]." ECF No. 18-1 at 16. Accordingly, the only way plaintiffs can invalidate their agreements based on the CBA is if the agreements are in direct conflict.

Although plaintiffs' failure to cite a single provision they allege is conflicting is telling

---

[8] In fact, the Supreme Court has very recently recognized the NLRA "does not express approval or disapproval of arbitration. It does not mention class or collective action procedures. It does not even hint at a wish to displace the Arbitration Act[.]" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018). On this point, it is worth noting plaintiffs make a passing reference to Section 8(a)(1) of the Act (29 U.S.C. § 158(a)(1)). *See* ECF No. 18-3 at 5-6. Though plaintiffs fail to provide any basis for this argument, to the extent plaintiffs are asserting an agreement to arbitrate individually "interfere[s] with, restrain[s], or coerce[s] employees in the exercise of the rights guaranteed in section 157," (29 U.S.C. § 158(a)(1)), this argument is foreclosed by the Supreme Court's decision in *Epic Systems*. 138 S. Ct. at 1624 ("The notion that Section 7 confers a right to class or collective actions seems pretty unlikely when you recall that procedures like that were hardly known when the NLRA was adopted in 1935.").

5

enough, perhaps even more glaring is their failure to mention—let alone address—the explicit limitation in the arbitration agreements that states, "Nothing in this Agreement prevents you from filing a grievance under the applicable collective bargaining agreement[.]" ECF Nos. 16-1 & 16-2 at ¶ 3.[9] *See also* ECF No. 18-3 at 3 (asserting the agreements apply to "any dispute, past, present, or future," without reference to the explicit carve outs). The agreements further confirm this express carve out by defining "dispute" to include only those "that would otherwise be resolved in a court of law or before a forum *other than arbitration*[.]" ECF Nos. 16-1 & 16-2 at ¶ 3 (emphasis added). As plaintiffs concede, the CBA requires "arbitration of disputes concerning the provisions of the CBA," and, accordingly, such disputes would not fall within the scope of plaintiffs' arbitration agreements. *See* ECF No. 18-3 at 3.

Nothing in the arbitration agreements purports to alter or eliminate any substantive right conferred by the CBA—the arbitration agreements merely provide a forum for the parties to resolve claims. Thus, the only possible area of conflict would arise from the agreements' dispute resolution procedures. But the arbitration agreements *explicitly prevent this* by covering only claims that are not otherwise required to be resolved under the collective bargaining agreement.[10]

What is more, plaintiffs concede "the [CBA] provisions only provide for arbitration of disputes concerning the provisions of the CBA and not of [the] statutory claims" plaintiffs assert

---

[9] This same provision also states nothing in the agreements prevents plaintiffs from "making a report to or filing a claim with a government agency, including without limitation the . . . National Labor Relations Board[.]" *Id.* This explicit carve out further undermines the applicability of plaintiffs' authorities, which invalidated arbitration agreements where such a carve out was *not* present. *See, e.g., Util. Vault Co.,* 345 NLRB 79, 82-83 (2005) (invalidating arbitration agreement as a result of "unfair labor practices" where, unlike here, "[t]he agreement does not provide an exception for the employees' statutory right to file charges with the Board.").

[10] Plaintiffs make a passing reference to a "zipper clause" in the CBA (*see* ECF No. 18-3 at 3), but fail to note this integration clause states only that the CBA supersedes any prior agreements that are "inconsistent with the provisions" of the CBA. ECF No. 18-2 at 274. Because, as discussed, there is no inconsistency, this provision is irrelevant.

here. ECF No. 18-3 at 3. That gives away the game. Plaintiffs, on the one hand, assert their claims fall outside the bounds of the CBA, thus enabling them to pursue class claims in court—precisely the type of claims that are indisputably covered by their arbitration agreements.[11] Yet on the other, they assert the CBA somehow prohibits arbitration of claims that concededly do not fall within the CBA's scope. Plaintiffs cannot have it both ways, and their patent attempt to avoid both procedural mechanisms to which they are bound must be rejected.

The critical carve-out for grievances filed under a collective bargaining agreement also removes this case from the purview of *Mendez*, on which plaintiffs rely to contend an agreement to arbitrate necessarily implicates the "mandatory subjects of bargaining" for which the union's "exclusive representative" must be involved. *See* ECF No. 18-3 at 4. Critical to the court's conclusion in *Mendez* that the arbitration agreement was a "term" or "condition" of plaintiff's employment was the scope of the agreement, which covered "any disputes with respect to your employment," without limitation, and thus "clearly covered the processing of any and every grievance relating to the terms and conditions of plaintiff's employment[.]" *Mendez*, 2008 WL 2945346 at *1. As a result, it was clear the arbitration agreement impinged on issues covered by the CBA, which had its own arbitration procedure to address grievances. *See id. See also Mendez*, 346 Fed. App'x at 603 ("The arbitration provision in the letter-agreement Starwood asked Mendez to sign is without limitation, extending **not simply to statutory claims** but to 'any disputes with respect to [Mendez's] employment.' Because the provision Starwood relies upon reaches *any* dispute, it relates to subjects that are within the union's exclusive bargaining realm, such as seniority, wages, and conditions of employment, and is therefore unenforceable.") (some

---

[11] ECF Nos. 16-1 & 16-2 at ¶ 3 (defining "dispute" to include only those "that would otherwise be resolved in a court of law or before a forum other than arbitration[.]").

emphasis in original). Plaintiffs' arbitration agreements are not so capacious, and instead properly limit their scope in recognition of any role the CBA may play for a particular employee's claims.

Thus, even if plaintiffs were subject to the CBA at the time they executed their arbitration agreements (they were not), nothing in the CBA or NLRA prohibited plaintiffs and UPS from entering these individual agreements to resolve disputes through arbitration, and their agreements must be enforced.

### III. PLAINTIFFS HAVE FAILED TO CHALLENGE THE SEPARATE DELEGATION AGREEMENT AND, ACCORDINGLY, THEIR CHALLENGES MUST BE RESOLVED BY AN ARBITRATOR

Plaintiffs do not dispute they explicitly agreed to have the arbitrator decide issues of arbitrability. *See* ECF Nos. 16-1 & 16-2 at ¶ 2 ("[T]he arbitrator, and not any court, shall have exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability or waiver of this Agreement"). Thus, as a matter of law, plaintiffs must raise an express challenge to the delegation clause itself to have a chance at removing the question of arbitrability from the arbitrator. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010) ("[U[nless Jackson challenged the delegation provision specifically, we must treat it as valid . . . The District Court correctly concluded that Jackson challenged only the validity of the contract as a whole.").

Here, plaintiffs' attempt to upend the delegation provision is premised solely on their contention UPS did not have authority to enter into the arbitration agreements. *See* ECF No. 18-3 at 5. As set forth above, plaintiffs' suggestion is based on the unsupported assumption they were bound by the CBA at the time the agreements were executed. Accordingly, this argument fails and the delegation agreement must be enforced.

8

Even assuming (again *arguendo*) the limitations applicable to union members applied to plaintiffs (they did not), plaintiffs have failed to explain how the specific delegation agreement impacted a "condition[] of employment" or conflicted with the terms of the CBA, such that this *specific agreement* was required to be negotiated through the "exclusive representative." *See* 29 U.S.C. § 159(a). A delegation agreement simply places the enforceability question in the hands of the arbitrator. *See, e.g., Rent-A-Center*, 561 U.S. at 71-72 (holding the delegation provision "gave the arbitrator exclusive authority to resolve any dispute relating to the enforceability of [the] Agreement.") (quotation, citation and alterations omitted). It is thus extremely limited in scope and, as Justice Ginsburg noted in *Rent-A-Center*, a party must challenge "the *particular sentences* that delegate such claims to the arbitrator, on some contract ground that is particular and unique to those sentences." *Id.* at 86 (Ginsburg, J., dissenting) (emphasis in original). Plaintiffs have failed to explain how this agreement to place questions of contract enforceability and interpretation in the hands of an arbitrator implicates a "condition[] of [plaintiffs' employment]," 29 U.S.C. § 159(a), or conflicts with any term of the CBA—nor could they, given its extremely limited scope.

Accordingly, this Court "must treat [the delegation provision] as valid under § 2 [of the FAA], and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Center*, 561 U.S. at 72. *See also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue.").

### IV. PLAINTIFFS' OWN POSITION PRECLUDES DENIAL OF UPS'S MOTION

It is UPS's position plaintiffs' claims must be sent to arbitration, and resolution of the

9

arbitration issue does not implicate the CBA or run afoul of the NLRA in any way. On the other hand, the Union (which plaintiffs assert is their exclusive representative), has "filed a class grievance against UPS pursuant to the CBA seeking to nullify the Agreements[.]" ECF No. 18-3 at 3. Thus, plaintiffs have taken the position resolution of this issue implicates the CBA and, accordingly, must be decided pursuant to the CBA's grievance procedures. *See* ECF No. 18-3 at 3, 5-6; ECF No. 18-1 at 22. This is entirely incompatible with plaintiffs' request the Court invalidate the arbitration agreements.

For the reasons set forth above (and in its motion to compel), UPS disagrees with plaintiffs' view and disputes that this issue should be decided under the CBA (or by the NLRB). Plaintiffs' bases for refusing to comply with their agreements to arbitrate are meritless and enforcement of plaintiffs' individual agreements to arbitrate is the only acceptable result.[12]

However, consistent with plaintiffs' own position, there is no basis for the Court to deny UPS's motion, and the Court should either enforce the arbitration agreements or stay the action pending resolution of the parallel proceedings.

| Dated:  New York, New York<br>            June 22, 2020 | **QUINN EMANUEL URQUHART & SULLIVAN, LLP** |
|---|---|
| | By: */s/ David LeRay*<br>     David LeRay<br>     51 Madison Ave., 22nd Floor<br>     New York, NY 10010<br>     Telephone:  (212) 849-7000<br>     davidleray@quinnemanuel.com |

---

[12] Moreover, final resolution of the issue through these processes can take years. Justice delayed is justice denied, and there is no reason to allow this action to languish on the Court's docket pending the outcome of these unnecessary parallel proceedings when the issue is fully ripe for this Court's decision.