```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
LALYNDA HEDGES and ZYAIRE              :
SIMMONS, on behalf of themselves and    :
all others similarly situated,          :
                                        :
                                        :   MEMORANDUM DECISION
                    Plaintiffs,         :   AND ORDER
                                        :
          - against -                   :   20-cv-870 (BMC)
                                        :
                                        :
UNITED PARCEL SERVICE OF AMERICA,       :
INC.,                                   :
                                        :
                    Defendant.          :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiffs commenced this putative class and collective action for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and New York Labor Law ("NYLL"), § 650 *et seq*. Before me is defendant's motion to compel arbitration. The motion is granted for the following reasons: (1) the parties entered into a side agreement to arbitrate all claims arising under the FLSA and mirroring state statute, an issue left unaddressed by the collective bargaining agreement ("CBA") between plaintiffs' union and employer; (2) although an employer generally has a duty to bargain with the union over mandatory subjects of bargaining not covered by the CBA, the union waived its right to demand collective bargaining negotiations as to any matter not covered by the CBA; and (3) since the arbitration of these statutory claims does not conflict with any provision contained in the CBA, the agreement to arbitrate amounted to a permissible side agreement under the CBA.

## BACKGROUND

For intermittent periods throughout 2018 and 2019, UPS employed plaintiffs as seasonal workers to augment its full-time work force whenever delivery services were in high demand.

As "peak season" workers, plaintiffs would receive daily text messages from their supervisors instructing them to report to a particular facility by a certain time. Upon their arrival to each facility, plaintiffs were required to sign in and wait to be partnered with a delivery driver before beginning the day's deliveries. Plaintiffs would regularly have to wait for the delivery trucks to be fully loaded, further prolonging the waiting period at the facility.

Once aboard the delivery truck and after departing the facility, plaintiffs would scan the barcodes of each package before it was delivered. Plaintiffs claim they were not paid for the time spent waiting to be teamed up with a driver and for the trucks to be loaded, the time following dispatch while in transit before making their first delivery, and the time spent in transit back to their assigned facility following their last delivery. Because the periods spent in transit at the beginning and at the end of each day were not compensated, plaintiffs claim UPS deprived them of hourly wages, including overtime pay whenever their weekly hours exceeded 40 hours.

Before their first day of work, plaintiffs signed UPS's Acknowledgement of Peak Season Hiring Policy (the "arbitration agreement"). The agreement contained an arbitration clause and description of the arbitration procedures. Of relevance to this case, it provided that: "**All disputes covered by this Agreement will be decided by a single arbitrator through final and binding arbitration and not by way of court or jury trial.**" (emphasis in original). The agreement further clarified that the breadth of the arbitration agreement applied to compensation disputes under the FLSA and equivalent state statutes, among other things:

> Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration, including without limitation, to disputes arising out of or relating to the application for employment . . . compensation … minimum wage … overtime . . . and claims arising under . . . the Fair Labor Standards Act . . . and state statutes or regulations, if any, addressing the same or similar subject matters, and all other federal or state legal claims (including without limitation torts) arising out of or relating to your … employment[.]

2

Another clause specified that an arbitrator would "have exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability or waiver of this Agreement, including, but not limited to any claim that all or any of this Agreement is void or voidable." However, explicitly exempted from this provision was plaintiffs' agreement to bring any claims on an individual basis and not on a class and/or collective action basis. Specifically, the parties agreed that any decision regarding the validity and enforceability of the class and collective action waiver resided with a court, not an arbitrator.

Plaintiffs Hedges and Simmons signed their agreements on October 24, 2019 and October 27, 2019, respectively. A few days later, plaintiffs elected to become members of Local 804, International Brotherhood of Teamsters ("Local 804" or the "union"). The CBA between Local 804 and UPS was comprised of the national master agreement (the "NMA") and Local 804's supplemental agreement to the NMA ("the local supplement").

The NMA requires UPS to provide a list of peak season employees to Local 804 and to honor their dues checkoff cards. Although the NMA does not expressly state that it covers "peak season" or "temporary" workers, it provides:

> Employees covered by this Agreement shall be construed to mean, where already recognized, feeder drivers, package drivers, sorters, loaders, porters, office clerical, customer counter clerks, mechanics, maintenance personnel (building maintenance), car washers, United Parcel Service employees in the Employer's air operation, and to the extend allowed by law, employees in the export and import operations performing load and unload duties, and other employees of the Employer for whom a signatory Local Union is or may become the bargaining representative.

Furthermore, Article 36 of the local supplement provides that the parties "expressly agree that during the lifetime of this Agreement there shall be no demands for collective bargaining negotiations as to any matter or issued not covered by the provisions of this Agreement, or for

the negotiation of any of the provisions of this Agreement, except as elsewhere provided in this Agreement."[1]

By negative implication, the NMA permits UPS to enter into "Extra Contract Agreements" with its employees, either on an individual or collective basis, subject to certain restrictions:

> Except as may be otherwise provided in this Agreement, the Employer agrees not to enter into, or attempt to enter into, any agreement or contract with its employees, either individually or collectively, or to require or attempt to require employees to sign any document, either individually or collectively, which in any way conflicts with the provisions of this Agreement. Any such Agreement or document shall be null or void. Any such agreement or document may not be placed in an employee's file or used by the Employer as a basis for discipline or used in connection with any disciplinary proceeding, nor may any such agreement or document nor the contents thereof be divulged to any person or entity.

Finally, the CBA only provides for arbitration of disputes concerning the provisions of the CBA itself and contains no provision as to the arbitration of employees' statutory claims.

## DISCUSSION

The Federal Arbitration Act ("FAA") states that "a written provision [in a contract] . . . to settle by arbitration a controversy thereafter arising out of such a contract . . . shall be valid, irrevocable, and enforceable[.]" 9 U.S.C. § 2. Moreover, because the FAA expresses "a liberal federal policy favoring arbitration agreements," the Supreme Court has instructed that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983).

On a motion to compel arbitration, "courts apply a standard similar to that applicable for a motion for summary judgment." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016) (citation omitted). The summary judgment standard requires a court to "consider all

---

[1] According to its own terms, the CBA remains in effect from August 1, 2018 through July 31, 2023.

4

relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits." Chambers v. Time Warner, Inc., 282 F.3d 147, 155 (2d Cir. 2002) (internal quotation marks omitted).

In the present case, plaintiffs do not dispute that they signed the arbitration agreements. Nor do they challenge the scope of the agreement as covering the claims raised in the instant case. Rather, they seek to invalidate their arbitration agreements on two grounds. First, they contend UPS lacked the authority to directly enter into "unenforceable side agreements" with union-represented employees. Second, even assuming UPS could enter into side agreements with its employees, the agreements nevertheless conflict with the CBA and are thus invalid. I reject both arguments.

The crux of plaintiffs' first argument is that these side agreements are invalid because defendant allegedly circumvented Local 804 – plaintiffs' designated exclusive bargaining representative – by directly dealing with them on an issue subject to mandatory bargaining under 29 U.S.C. § 159(a). However, the case on which plaintiffs rely for this proposition, Mendez v. Starwood Hotels & Resorts Worldwide, Inc., 346 F. App'x 602 (2d Cir. 2009), is distinguishable.

In Mendez, the Second Circuit affirmed the district court's decision to invalidate an arbitration agreement between the plaintiff and his employer. The Court reasoned that, by joining a union, Mendez had elected to be represented by the union when it came to certain issues. Specifically, pursuant to the National Labor Relations Act, the union – as the plaintiff's designated bargaining representative – had the exclusive authority to bargain over "rates of pay, wages, hours, or employment, or other conditions of employment." 29 U.S.C. § 159(a). Therefore, the side agreement between Mendez and his employer, requiring him to arbitrate "any

5

dispute relating to his employment," amounted to an unenforceable side agreement, as "only Mendez's union had the authority to negotiate such an arbitration agreement[.]" Id. at 603.

Mendez does not stand for the broad proposition that an employer may never enter into a side or extra contract agreement with its employees. Notably, the CBA in Mendez did not contain any provision permitting "side agreements" between the employer and an employee.[2] Without such a clause, Mendez's employer had no legal basis to circumvent the union and directly approach a union-represented employee with an agreement to arbitrate – nothing in the CBA excused the employer's decision to exclude the union.

The CBA in our case, however, is not so restrictive. The CBA negotiated between the union and UPS contained a provision unequivocally permitting UPS to enter into "Extra Contract Agreements" with its employees on either an individual or collective basis, so long as these side agreements did not conflict with the CBA. See Pryner v. Tractor Supply Co., 109 F.3d 354, 363 (7th Cir. 1997) (stating a worker's statutory rights are arbitrable if the worker consents to have them arbitrated and the CBA does not preclude such side agreements); Atkinson v. House of Raeford Farms, Inc., No. 09-cv-1901, 2012 WL 2803737, at *3 (D.S.C. July 10, 2012) (stating extra-contractual agreements with employees were valid because the CBA expressly permitted side agreements that did not conflict with the CBA).

At the heart of these holdings is the recognition that § 159(a) preserves an employee's "right at any time to present grievances to [his] employer and to have such grievances adjusted,

---

[2] See No. 08-cv-4967 Dkt. No. [13-1], Exhibit 1, (S.D.N.Y. July 11, 2008).

6

without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of the [CBA] then in effect[.]"[3]

A CBA's mere silence on a specific matter or issue, however, does not necessarily justify an employer's direct dealings with a union-represented employee. The duty to bargain generally continues during the term of a collective-bargaining agreement with respect to mandatory subjects of bargaining not covered by the CBA. See NLRB v. Jacobs Mfg. Co., 196 F.2d 680, 684 (2d Cir. 1952); Mv Transportation, Inc., 368 N.L.R.B. No. 66, 5 (2019). Therefore, an employer violates 28 U.S.C. § 158(a)(5) and (1) if it makes a material, substantial, and significant change regarding a mandatory subject of bargaining without first providing the union notice and a meaningful opportunity to bargain about the change to an agreement or impasse, absent a valid defense. See Litton Financial Printing Division v. NLRB, 501 U.S. 190, 198 (1991). One such valid defense is when the union "clearly and unmistakably" waives its right to bargain. See Local Union 36, Int'l Bhd. of Elec. Workers, AFL-CIO v. NLRB, 706 F.3d 73, 81–82 (2d Cir. 2013) (stating a union may waive its statutory right to bargain over a particular term of condition of employment).

It is for this reason I reject plaintiffs' contention that UPS was required to provide Local 804 with notice and an opportunity to negotiate the arbitration agreements with respect to employees' statutory claims. Under the local supplement, attempting to negotiate with Local 804 on this issue would have been futile. By agreeing that there would be no demands for collective bargaining negotiations as to any matter or issue not covered by the provisions of the local supplement, see Article 36, Local 804 clearly and unmistakably waived its right to

---

[3] Under the NLRA, the bargaining representative must be given the opportunity to be present at such adjustment. See § 159(a). At oral argument, UPS stated that plaintiffs' union representatives would be permitted to be present at any arbitration hearing.

collectively bargain and negotiate over the arbitrability of an individual employee's statutory claims – an issue even plaintiffs concede remained unaddressed by the CBA.

Any allegation of improper "unilateral" or "direct" dealings is belied by the evidence. The CBA explicitly provided UPS with the right to enter into extra contract agreements with its employees so long as they were consistent with the CBA; the CBA did not address the arbitrability of plaintiffs' statutory claims; and Local 804 expressly waived its right to collectively bargain and negotiate over matters left unaddressed by the CBA. There is no reason why these unambiguous provisions should not be enforced as written. See Aeronautical Indus. Dist. Lodge 91 of Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Techs. Corp., Pratt & Whitney, 230 F.3d 569, 576 (2d Cir. 2000).

Moving now to plaintiffs' second argument to invalidate their arbitration agreements, there is no basis to declare these side agreements "null and void." Besides summarily stating their arbitration agreements are "inconsistent with the CBA," plaintiffs have failed to advance any argument or cite any particular provisions within the CBA from which a conflict with the arbitration agreements arises. It is well-settled that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." Tolbert v. Queens College, 242 F.3d 58, 75 (2d Cir. 2001) (citation omitted). In any event, plaintiffs conceded in their opposition to the instant motion that the CBA provisions "only provide for arbitration of disputes concerning the provisions of the CBA and not of statutory claims." Because the side agreements do not conflict with the CBA, they are valid and enforceable.

A contrary conclusion would make little sense. But for the pre-employment arbitration agreement, both sides agree that plaintiffs' FLSA and NYLL claims are properly before this Court. That is, those claims are excluded from, and could not be brought under, the grievance

procedures set forth in the CBA.  It follows that, today, if plaintiffs wanted to, even though they are union members and governed by the CBA, they could consent to UPS's motion to compel arbitration, or they could enter into some other form of arbitration agreement with UPS without running afoul of the CBA.  Yet if they could enter into an arbitration agreement now, as Local 804 members, without violating the CBA, it cannot be that they were prohibited from entering into the agreement arbitration when they were not even yet members of Local 804, or that the arbitration agreement they signed as non-union members became void when they became union members.

As stated earlier, the decision as to whether the class and collective action waiver is valid and enforceable remains with the Court, and I must therefore resolve this question before the claims are sent to arbitration.  But the Supreme Court has resolved this issue.  See Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612 (2018) (permitting an employer to condition employment on employees entering into an arbitration agreement that contains a class or collective action waiver).

Because the parties agreed to arbitration through a permissible side agreement and plaintiffs' FLSA and NYLL claims fall within the scope of the agreement, plaintiffs are required to proceed before an arbitrator on an individual basis.

## CONCLUSION

Defendant's [16] motion to compel individual arbitration is granted.  The Court will stay the matter pending outcome of arbitration.  See Katz v. Cellco P'ship, 794 F.3d 341, 346 (2d Cir.

9

2015). The Clerk of Court is directed to terminate the case for administrative purposes only, subject to reopening at request of any party within 60 days of any final arbitration award.

**SO ORDERED.**

_____<br>U.S.D.J.

Dated: Brooklyn, New York
      August 4, 2020